IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES R. POWELL,
        Plaintiff,

v.                                                                    CIV 97-721 KBM

UNITED STATES POSTAL SERVICE, and
MARVIN T. RUNYON, Postmaster General,
        Defendants.

*Consolidated with*

CHARLES R. POWELL,
        Plaintiff,

v.                                                                   CIV 99-633 KBM

UNITED STATES POSTAL SERVICE,
WILLIAM HENDERSON, Postmaster General,
        Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant William J. Henderson's Second Motion For Summary Judgment *(Doc. 39)*. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The motion will be granted as to the Rehabilitation Act and racial discrimination claims, but will be denied as to the remanded Title VII retaliation claim.

### I. Procedural Background

The following is a summary from the Tenth Circuit's unpublished decision in Civil Action 97-721. *Powell v. United States Postal Service,* 1999 WL 258209 (10th Cir. Apr. 29, 1999)

*(attached)*. In the early 1990's, Plaintiff Charles Powell (Powell) brought an EEOC charge claiming discrimination and retaliation against his employer, the United States Postal Service (USPS). In 1993, an Administrative Law Judge (ALJ) found no discrimination, but did find that the USPS had retaliated against Powell in association with his application for a training technician position. A lawsuit to enforce that determination was settled by a 1996 written settlement agreement (Agreement). The Agreement provided that Mr. Powell would be promoted to his current position as a night shift Training Technician, awarded him $15,000.00 compensatory damages, and granted him attorney fees. *Id.* at *1.

The Agreement did not address which days of the week that Plaintiff would have off. Plaintiff was originally assigned Tuesday and Wednesday as his days off, but he insisted on weekends off instead. During the negotiations leading to the execution of the 1996 Agreement, the USPS Plant Manager had sent Plaintiff an April 26, 1995 letter outlining the corrective relief eventually accepted in the settlement. Consistent with what had been offered in that letter, Powell was reassigned from consecutive days off during the work week to Saturday and Monday as his days off.

As noted by the Tenth Circuit, Plaintiff did not object when the non-consecutive days were first proposed in the April 1995 letter. After receiving the new schedule, however, Plaintiff argued that a mistake had been made and that he should have been given Friday and Saturday as his days off duty. *Id.* at **1-2. Plaintiff then filed Civil Action No. 97-721 alleging racial discrimination and retaliatory motive as the reason for not being assigned consecutive weekend days off in implementing the Agreement. In June 1998, Senior District Judge Mechem granted summary judgment in favor of Defendants.

On appeal, the Tenth Circuit held that "Mr. Powell did not make a *prima facie* case of discrimination or retaliation concerning the manner in which the settlement agreement was executed." *Id.* at *2. Under the doctrine of the "law of the case," matters decided on appeal govern the remainder of the proceedings in this court. *E.g., United States v. Alvarez,* 142 F.3d 1243, 1347 (10th Cir.), *cert. denied,* 525 U.S. 905 (1998). The facts underlying that decision have not changed, and I will not revisit the issue again.

However, the Tenth Circuit also found that a new basis for retaliation may have arisen while the case was on appeal. Powell has continued to request consecutive weekend days off since 1996 and throughout this litigation. In a November 6, 1998 letter, USPS Human Resources Specialist Patricia Davis informed Powell that "***until your pending lawsuit is settled this change would not be possible***." The Tenth Circuit, considering this evidence which was unavailable when Judge Mechem ruled, remanded on April 29, 1999 for this Court to examine "whether Mr. Powell has sufficient evidence to present a prima facie case that defendants are retaliating against him for bringing this current action."[1]

Unbeknownst to the Tenth Circuit, Powell had already filed a new EEOC charge in response to the November 1998 letter denying his renewed request for consecutive weekend days off. Indeed, the second now consolidated lawsuit, Civil Action No. 99-633 KBM, was brought by

---

[1] Following the remand, I decided that Plaintiff could rely on all of the prior evidence plus the evidence considered by the Tenth Circuit on the new retaliation claim. *Doc. 36.* I did so because the history of contention and litigation between the parties provides the context in which the retaliation claim arose, and may provide evidence regarding the motivations underlying the action taken November 9, 1998. I did not rule that the claim based upon the initial decision to assign him to non-consecutive weekend days off would be revived and relitigated. Only Powell's "new" retaliation claim as fashioned by the Tenth Circuit and those raised in the second lawsuit remain.

3

Plaintiff following the EEOC's rejection of his February 1999 charge on timeliness grounds. In this second action, Plaintiff raises Title VII claims based on race discrimination, retaliation and a claim under the Americans With Disabilities Act (ADA).

Defendant Henderson moves for summary judgment as to both actions arguing that: (1) denial of a schedule change to weekends off in 1998 does not constitute an adverse employment action; (2) the Postal Service had a legitimate business reason for not changing Plaintiff's days off, namely advice of counsel; and (3) Plaintiff failed to exhaust his administrative remedies on his disability discrimination claim.

## II.  The Postal Service Is Dismissed As A Party/ ADA Claim Is Construed As Rehabilitation Act Claim

Plaintiff's first suit was brought against both the Postal Service and Postmaster General Henderson. He does not dispute that his employment claims must be brought solely against the Postmaster General. Indeed, Plaintiff's second suit is styled that way. *See Brezovski v. United States Postal Serv.,* 905 F.2d 334, 335 (10th Cir. 1990); *Johnson,* 861 F.2d at 1478; 42 U.S.C. § 200e-16(c); 29 U.S.C. § 794a(a)(1). Therefore, the Postal Service will be dismissed as a defendant.

Because federal employees are not covered under the ADA, Section 501 of the Rehabilitation Act is the exclusive remedy for postal service employees suing for handicap discrimination. *Johnson v. United States Postal Serv.,* 861 F.2d 1475, 1477 (10th Cir. 1988), *cert. denied,* 493 U.S. 811 (1989). Therefore, Plaintiff's ADA claim is construed as raising a Rehabilitation Act claim.

4

### III. The Rehabilitation Claim Act Is Unexhausted

Like the requirements for suits under Title VII, exhaustion of administrative remedies is a jurisdictional prerequisite for instituting a cause of action under the Rehabilitation Act in federal court. *E.g., Woodman v. Runyon,* 132 F.3d 1330, 1341 (10th Cir. 1997). One of the applicable federal regulations required Powell to try and resolve the matter informally first, by contacting an EEO counselor within forty-five days of the adverse decision or action before filing a charge with the EEOC. 29 C.F.R. § 1614.105(a)(1). Insofar as Defendant relies on the EEOC's stated rationale for why Powell failed to comply with this provision, the position is without merit.[2]

Plaintiff does not dispute, however, that he knew eight months before he sought EEOC counseling of his employer's refusal to change his work schedule. *See* 29 C.F.R. § 1614.105(2) (defining the day from which the 45-day deadline begins to run). Plaintiff acknowledges that he received oral notice in April 1998 that his request for a schedule change was denied and would not be granted because of the pending lawsuit. Plaintiff does not claim that he was unaware of the filing requirements, that he was prevented from contacting the counselor earlier, or that he offered any other reason to the agency for his delay. *See* 29 C.F.R. § 1614.105(2). Because Powell waited until December 1998 to contact an EEO counselor, the Court lacks jurisdiction to entertain the disability discrimination claim.

The same analysis applies to the racial discrimination claim that Plaintiff raises in his

---

[2] The EEOC found that Plaintiff did not seek EEOC counseling until December 28, 1998. Plaintiff received the November 6, 1998 refusal letter on November 9th, so he was required to contact the EEOC by Christmas Eve. Powell's evidence establishes that his December 23, 1998 letter was mailed the next day. The postmark, not the date of receipt, establishes the date on which he sought EEOC counseling. *See* 29 C.F.R. § 1614.604(a).
It therefore appears that EEOC's stated reason for finding untimeliness was in error.

second lawsuit. Thus, I find the Court lacks jurisdiction over both the disability and race discrimination claims. However, Plaintiff's new retaliation claim survives because of the posture of the case following remand.

### IV. Factual Background For Summary Judgment Analysis

Defendant incorporates the materials submitted with the first motion for summary judgment, and those materials in conjunction with new submissions establish that the following facts are not in dispute. In the spring of 1998, Plaintiff frequently began calling in sick on Saturday nights. His supervisor, Patricia Davis,[3] discussed the matter with him. Powell related that the lack of having consecutive days off on the weekend was causing him to miss work. He again requested that Ms. Davis change his schedule and submitted his request in writing in April 1998. Powell asserted that he wanted the "indefinent" [sic] schedule change for "mental and physical health reasons and also to mitigate damages for [his] pending lawsuit."

Although the Postal Service was capable of accommodating Plaintiff's requested schedule change without any undue burden, Ms. Davis was informed that "it would not be prudent" to change Plaintiff's schedule "until a settlement of some sort could be reached in the lawsuit." *Davis Affidavit at ¶ 10.* She then orally advised Plaintiff of the reason his request would not be granted. Plaintiff continued to call in sick frequently on Saturday nights and, while the summary judgment was on appeal, Powell renewed his scheduling change request. Once again, Ms. Davis relayed the denial and USPS's position, this time in writing the November 6, 1998 letter that was

---

[3] The parties are in disagreement as to Ms. Davis' ethnicity. Plaintiff claims that Ms. Davis is Hispanic based on a code entered in an EEO database for a complaint she apparently filed. *Plf. Response, Ex. I.* That entry appears insufficiently reliable to contradict Ms. Davis' affidavit testimony that she is African American, however. *Davis Affidavit at ¶ 7.*

specifically referenced by the Tenth Circuit. *See Davis Affidavit at ¶ 9-11.*

## V. Whether Powell's Schedule Constitutes "Adversity"

As an element of his *prima facie* claim of retaliation, Powell is required to show that the employer has taken some "adverse employment action" against him.[4]  *See Jeffries v. Kansas,* 147 F.3d 1220 (10th Cir. 1998). The issue here presented is whether denying a schedule change to consecutive weekend days off rises to the level of an action that is considered "adverse." I am bound by Tenth Circuit precedent, and, frankly, it is unclear how the Tenth Circuit would decide the "adversity" issue on the facts of this case.

The Tenth Circuit construes "adverse employment action" liberally, and has rejected the use of the "material/minor," "tangible action," or "ultimate employment decisions" tests. *Id.*; s*ee also, Burlington Industries v. Ellerth,* 524 U.S. 742, 761 (1998) (importing the "tangible employment action" concept for cases involving supervisor sexual harassment "without endorsing the specific results of those decisions"); *Chappell v. School Bd. of City of Virginia Beach,* 12 F. Supp2d 509, 516 & n.3 (E.D. Va. 1998) (comparing the tests). Instead, "adversity" must be evaluated on a case-by-case basis under Tenth Circuit law.[5]

---

[4] "The elements of the prima facie case of retaliation are the same whether a plaintiff proceeds under the Rehabilitation Act, ADA, ADEA, or Title VII." *Bennett v. Henderson,* 15 F. Supp.2d 1097 (D. Kan. 1998) (elements are: (1) engaging in protected activity; (2) an adverse employment action after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse employment action), *aff'd,* 1999 WL 46697 (10th Cir. Feb. 3, 1999).

[5] Defendant points out that Judge Mechem found no adverse employment action with regard to the initial decision to assign Plaintiff to non-consecutive weekend days off in executing the settlement agreement. *Doc. 22.* However, Judge Mechem relied solely on a decision from the Seventh Circuit that employed the materiality test, which has since been rejected by the Tenth Circuit. Thus, the schedule's "adversity" must again be addressed.

Not every decision by an employer with which the employee disagrees is considered adverse. For instance, "a mere inconvenience or an alteration of job responsibilities" will not be considered to be an adverse employment action. *Sanchez v. Denver Public Schs.,* 164 F.3d 527, 532 (10th Cir. 1998). Similarly, purely lateral transfers that do not involve a change in pay, benefits, or responsibilities are not generally considered "adverse." *Id.* This is true even if the lateral transfer was involuntary and regardless of how the transfer is perceived by the employee. At least one opinion from the Tenth Circuit, however, has indicated a possible exception to this general rule – lateral transfers or reassignments, ***particularly if there is evidence of retaliation***, may constitute "adverse" actions.[6]

Cases from other courts have specifically held that schedule changes of the type involved here are not "adverse." [7] Yet others have held that transfers to the night shift from the day shift, or a refusal to transfer from the graveyard shift, may constitute an "adverse" action if it is

---

[6] *E.g., Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir. 1993) (reassignment against one's wishes due to preemptive retaliation constitutes adverse employment action); *Collins v. Illinois,* 830 F.2d 692, 702 n.7 (7th Cir. 1987) (collecting cases re: transfers in retaliation cases).

[7] *E.g., Hiller v. Runyon,* 95 F. Supp.2d 1016, 1022 (S.D. Iowa 2000) (changing starting hours of postal employee with testicular cancer who was restricted to 8-hour shift not adverse); *Miller v. Maddox,* 51 F. Supp.2d 1176, 1190 (D. Kan. 1999) (transfer of plaintiff from detective to patrol was not adverse because "there is no difference in rank or pay" and that prestige associated with the detective position alone was insufficient to establish adversity); *McCoy v. Macon Water Authority,* 966 F. Supp. 1209, 1214, 1221 (M.D. Ga. 1997) ("Plaintiff's subjective view that the schedule was unreasonable is not sufficient evidence that the schedule affected a term or condition of his employment"); *but see Settle v. Baltimore County,* 34 F. Supp.2d 969, 1001 (D. Md. 1999) (where employee's scheduled days off were changed from Sunday and Monday to Wednesday and Thursdays, judge agreed that "it is very likely that the Fourth Circuit would view the scheduling of days off as beyond the scope of Title VII because the denial of preferred days off is almost certainly not an adverse employment action" yet presumed for the purpose of analysis that "scheduling matters potentially have more that a trivial impact on terms and conditions of employment), *aff'd,* 2000 WL 51283 (4th Cir. Jan. 24, 2000).

considered by the employee as a less desirable schedule and if there is evidence that the transfer was taken with a retaliatory purpose.[8]

I have not located a decision in the Tenth Circuit that deals with an employee-initiated request and an employer's denial of a schedule change for a particular day off. Thus, I am unable to say as a matter of law that such an action by the employer amounts to a "mere inconvenience." In the present case, Powell wants to remain on the night shift, but yearns for two consecutive weekend days off so that he can pursue a life that more closely mirrors that of people who work a typical daytime/weekday schedule. *See Plf. Response at 5-7.* Clearly, Powell considers his present schedule undesirable arguing that it negatively impacts his health and quality of life.

---

[8]  Some of these decisions are not limited to shift changes as drastic as from a day to night shift:

> [A]ssigning an employee to an undesirable schedule can be more than a trivial inconvenience or minor change in the employee's working conditions. *See Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 788 (3rd Cir. 1998) (change in employee's schedule to shift offering little free time and requiring weekend work); *Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir. 1986) (transfer to night shift); *Florence v. Runyon,* 990 F. Supp. 485, 498 (N.D. Tex. 1997) (transfer to new position with different work hours); *Khan v. Cook County,* No. 96-C-1113, 1996 WL 43[2]410, at *2 (N.D. Ill. July 30, 1996) (transfer to night shift); *Maddox v. County of San Mateo,* 746 F. Supp. 947, 953 (N.D. Cal. 1990) (employer refused to transfer employee form graveyard shift).

*Quiroz v. Hartgrove Hosp.,* 1999 WL 281343 (N.D. Ill. 1999). *See also Coffman v. Tracker Marine,* 141 F.3d 1241, 1245 (8th Cir. 1998) (jury could find that not permitting plaintiff to take all of her federal holidays was adverse employment action because it was a "material change" in her existing employment benefits); *Meckenberg v. New York City Off-Track Betting,* 42 F. Supp.2d. 359, 378 (S.D.N.Y. 1999) ("While an employee's subjective dissatisfaction does not necessarily render an employment action adverse, [plaintiff] has created a material issue of fact with regard to her claim that the working conditions . . . were objectively unfavorable" due to shortage in staff and less desirable department); *Murphy v. Yellow Freight System, Inc.,* 832 F. Supp. 1543, 1550 (N.D. Ga. 1993) ("singling an employee out for less desirable shifts might constitute an 'adverse employment action' in some circumstances").

9

It is also undisputed that the Postal Service can grant him the schedule he wants without undue burden to its operations. Indeed, his night shift co-workers already have consecutive weekend days off. Given this evidence potentially supporting a finding of retaliatory motive and the recent Tenth Circuit precedent, I find that Plaintiff has come forward with sufficient evidence to avoid the entry of summary judgment on the material issue of whether USPS's conduct constitutes an adverse employment action.

### VI.  Defendant's Reliance on a "Legitimate Business Reason" For Its Actions

Assuming that the jury finds that the refusal to accommodate Powell's request constitutes an adverse action and that Powell has otherwise demonstrated a *prima facie* case of retaliation, the burden shifts to the employer to provide an explanation for its action which is "legally sufficient to justify a judgment for the defendant." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The employee shoulders the ultimate burden of proving that he has been the victim of retaliation. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). A Plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

USPS has submitted evidence that the schedule change was denied in order for the Postal Service to preserve its bargaining and litigation position as to Plaintiff's lawsuit. Defendant presents evidence that 1997 settlement discussions preceding Judge Mechem's entry of judgment broke down when Plaintiff demanded $600,000 in damages as well as the schedule change. *Propst Supplemental Declaration at ¶ 3.* In his "Addendum," however, Plaintiff asserts that no

10

such offer was ever made.[9]

Counsel for the Postal Service, Mr. Propst, advised against granting Plaintiff's request to have his off-days changed while the suit was pending because it could compromise future settlement negotiations. According to counsel:

> When Mr. Garcia contacted me in 1998, I advised him not to approve the change in days off, as the question of Mr. Powell's days off was being actively litigated at the time. I understood Mr. Powell's request to be for a permanent[10] change in his days off, to the very days off that he was seeking as relief in his lawsuit. In my view, the Postal Service's ability to litigate the case effectively would be compromised, as any possibility of settling the matter would likely be foreclosed.

*Propst Supplemental Declaration at ¶ 3.* Defendant contends that this litigation strategy amounts to a legitimate business reason for its decision.

As an initial matter, Defendant cites no decision, and I have found none, holding that such a preservation of the employer's bargaining position constitutes a lawful nondiscriminatory reason

---

[9] Although this Addendum *(Doc. 42)* does not constitute testimony under oath, the *pro se* Plaintiff states:

the parties were ordered to travel to Las Cruces where they sat in different rooms. Federal Magistrate Judge Smith attempted to broker a settlement by shuttling between the parties. Judge Smith ended the session after he concluded that the parties were too far apart. No offer was made. The judge's words were "what if, I can get them to agree to change your schedule?" The Plaintiff's response was "they would have to do more than just what they should have done a year and a half earlier." At another point, Judge Smith asked "what if, I can get them to also contribute something toward the cost of your return to school?" No specific amount was mentioned. The judge made an honorable effort, but there was no offer made.

[10] In her letter, however, Ms. Davis specifically refers to Powell's request as one for "an indefinate (sic) schedule change."

11

as a matter of law.  I would further question the rationale of any case so holding.[11]  Prohibited retaliation is defined under Title VII as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

§42 U.S.C. 2000e-3.  In essence, Defendant is arguing that retaining a bargaining chip to encourage settlement provides lawful justification to adversely affect an employee based upon his opposition to conduct perceived as violating federal law.  It would seem that such a "litigation privilege" could effectively insulate behavior that would otherwise be actionable under Title VII.[12]  *Cf. Steffes v. Stepan Co.*, 144 F.3d 1070, 1075-76 (7th Cir. 1998) (prerogative to investigate and prepare a defense found insufficient to warrant recognition of an absolute litigation privilege against claim of retaliation).

---

[11] For example, I can imagine an employer refusing to promote a woman on the basis that she was not qualified for the position.  She then files suit alleging gender discrimination under Title VII and seeking placement in that position.  While that suit is pending, the plaintiff again applies for another position to which the employer concedes she is qualified.  Assume that the employer concedes that **but for** her Title VII lawsuit, she would be selected.  Would the employer be privileged to deny her the second promotion of equal pay and rank solely because it would remove a potential "card" from its deck of settlement options? Following the logic of Defendant's position, it would seem that the employer could *in fact* deny an opportunity to which the employee was entitled solely because she chose to pursue rights pursuant to Title VII.

[12] This observation should not be confused with the situation in which the adverse action is taken to **comply** with the terms of a settlement agreement.  *Carey v. United States Postal Serv.*, 812 F.2d 621 (10th Cir. 1987) (no evidence of discrimination when Postal Service's motivation in awarding position to black worker instead of white worker was good-faith attempt to settle black worker's Title VII claim).  Thus, implementation of a settlement can constitute a legitimate business reason.

Yet, I need not rule on the adequacy of the proffered reason for the employer's action.[13] Even "if the defendant has failed to sustain its burden but reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a *prima facie* case, then a question of fact does remain, which the trier of fact will be called upon to answer." *St. Mary's*, 509 U.S. at 510. In this case, the jury must still address whether Powell's non-consecutive days-off schedule is sufficiently "adverse" under Title VII to establish a *prima facie* case of retaliation. Additionally, if Defendant has come forward with a lawful reason for its action, Powell has produced sufficient evidence to support a reasonable conclusion that USPS was not just protecting its negotiation position, but was also motivated to penalize Powell for filing the lawsuit and his appeal. For all of the above reasons, I conclude that USPS is not entitled to judgment as a matter of law at this time.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Postal Service is dismissed as a party to CIV 97-721 KBM;

2. Defendant William J. Henderson's Second Motion For Summary Judgment *(Doc. 39)* is GRANTED as to all but the remanded Title VII retaliation claim; and

3. This matter will be referred to another Magistrate Judge for a settlement conference at his earliest convenience. If settlement efforts fail, the matter will be set for a jury trial as early as the Court's schedule will permit.

_____
UNITED STATES MAGISTRATE JUDGE

---

[13] Moreover, the state of the briefing cautions against addressing the "legitimacy" issue at this point. Other than the bald assertion that such a litigation strategy constitutes a lawful business reason for its decision, Defendant has not addressed any precedent or rationale supporting that position.

13

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

182 F.3d 932 (Table)
1999 CJ C.A.R. 2403
**Unpublished Disposition**
**(Cite as: 182 F.3d 932, 1999 WL 258209 (10th Cir.(N.M.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the publication and citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

**Charles R. POWELL, Plaintiff-Appellant,**
**v.**
**UNITED STATES POSTAL SERVICE, and William J. Henderson, Postmaster General,**
**Defendants-Appellees.**

**No. 98-2178.**

April 29, 1999.

Before BRORBY, EBEL, and LUCERO, C.J.

ORDER AND JUDGMENT [FN*]

> FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

**\*1** Plaintiff Charles R. Powell appeals from an order of the district court granting defendants' motion for summary judgment in this action brought pursuant to Title VII, 42 U.S.C. §§ 2000e-2000e-17. [FN1] We reverse and remand.

> FN1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mr. Powell originally filed charges of race and age discrimination and retaliation with the EEOC in 1993. An administrative law judge determined that defendants had not discriminated against Mr. Powell, but recommended a finding of retaliation. In 1995, Mr. Powell commenced an action in federal district court to enforce the EEOC determination. The parties entered into a settlement agreement in 1996 which was signed by Mr. Powell and his attorney. Mr. Powell then withdrew his suit. The agreement provided that Mr. Powell would be promoted retroactively to 1993, would receive (1) back pay, including shift differential and any other pay increases, due between 1993 and 1996; (2)

14

interest on those unpaid wages; (3) calculated overtime; (4) credit for used sick leave; and (5) $15,000.00 in compensatory damages, as well as attorney's fees. The agreement also stated that defendants would not retaliate against Mr. Powell in any manner for filing his EEOC action, the 1995 civil action seeking enforcement of the agency's determination, or for signing the agreement.

After the agreement was signed, Mr. Powell contested his scheduled days off, an issue which had not been made a part of the settlement agreement. Defendants had originally scheduled him to have consecutive days off during the week. Mr. Powell preferred to be off on weekends. Defendants then scheduled Mr. Powell with Saturday and Monday off, as had been stated in a letter sent by defendants during the settlement negotiations. See Rec., tab 19, Ex. 6 & Ex. B at 2. Over a year later, Mr. Powell argued that defendants had made a mistake in that letter and had actually accepted his proposal of Friday and Saturday as days off. See id. tab. 20, enc. K.

In 1998, Mr. Powell commenced this action in district court. Mr. Powell claimed defendants were discriminating against him on the basis of race and were retaliating against him as evidenced by his assignment of days off. The district court held that Mr. Powell had failed to make a prima facie case of discrimination or retaliation as he had instigated all changes in his schedule. Further, consecutive days off were not a part of the negotiated terms of the settlement agreement.

We review the district court's ruling on a motion for summary judgment de novo, examining "the record to determine whether any genuine issue of material fact was in dispute" and if "the substantive law was applied correctly." McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir.1998) (quotation omitted).

The plaintiff in a Title VII case "bears the initial burden of setting forth a prima facie case of discrimination." Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir.1998). Tailoring the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) scheme to fit the facts of this disparate treatment case, Mr. Powell can establish a prima facie case of discrimination by showing that as a member of a protected class, he suffered an adverse employment action and similarly situated nonminority employees were not subjected to the same action he was. Cf. EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir.1992).

**\*\*2** To establish a prima facie case of retaliation, Mr. Powell must show: 1) he had opposed Title VII discrimination; 2) he suffered an adverse employment action; and 3) a causal connection exists between his protected Title VII activity and the adverse employment action. See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262-63 (10th Cir.1998). "The burden of persuading the factfinder that the defendant intentionally discriminated remains at all times with the plaintiff ... and the plaintiff must prove that the defendant's action was intentionally retaliatory." Id. at 1263.

Mr. Powell was originally assigned consecutive days off during the week. He objected to having his days off scheduled midweek and requested weekends off instead. Only after he specifically requested weekends off was he given nonconsecutive days off as originally proposed by defendants. Mr. Powell

15

had not objected when these days were first proposed. Under these facts, Mr. Powell did not made a prima facie case of discrimination or retaliation concerning the manner in which the settlement agreement was executed.

However, Mr. Powell has submitted a letter to this court that appears to be defendants' response to his renewed request for consecutive weekend days off. Defendants denied the request stating that "until your pending lawsuit is settled this change [is] not possible." Letter of November 6, 1998. [FN2] This response, considered along with the other evidence of record, raises concerns that defendants may now be retaliating against Mr. Powell. We note that defendants have previously been found to have retaliated against Mr. Powell and were unwilling to settle that claim. See Rec. tab. 20, enc. E. (correspondence from magistrate judge noting that defendants were "unwilling to enter into a reasonable settlement" after the agency had found retaliation and that defendants' position was "very difficult to understand in light of the rather clear liability in this cause"). Mr. Powell has also stated that he is the only Black American working in the Albuquerque Human Resources department, is the only person who has filed an EEOC complaint, and is the only person working in his position who has nonconsecutive days off.

> FN2. We note that this letter was sent after the district court entered judgment in the pending action and while Mr. Powell's appeal was pending before this court.

Retaliatory motive can be shown by "protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir.1982). It appears that Mr. Powell may be able to make the required showing here. Therefore, in the interests of justice, we must remand this case to permit the district court to determine whether Mr. Powell has sufficient evidence to present a prima facie case that defendants are retaliating against him for bringing this current action. Should the district court determine that Mr. Powell can present such a prima facie case, defendants must then articulate a legitimate business reason to show a nondiscriminatory motive for refusing to reconsider Mr. Powell's schedule while this suit is pending.

**\*\*3** The district court's judgment is REVERSED and this case is REMANDED for further proceedings in accordance with this order and judgment. Mr. Powell's motion to supplement the record is GRANTED insofar as we recognize that Mr. Powell has additional evidence that should be considered by the district court. See Aero-Medical, Inc. v. United States, 23 F.3d 328, 329 n. 2 (10th Cir.1994). The mandate shall issue forthwith.

END OF DOCUMENT